SCOTT, Appellant,

v.

CLEVELAND CIVIL SERVICE COMMISSION, Appellee.

[Cite as *Scott v. Cleveland Civ. Serv. Comm.*, 176 Ohio App.3d 138, 2008-Ohio-1926.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89707.

Decided April 24, 2008.

Kevin Patrick Prendergast, for appellant.

Robert J. Triozzi, Director of Law, William M. Menzalora, and Jose M. Gonzalez, Assistant Directors of Law, for appellee.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Appellant, Patrick J. Scott, brings this administrative appeal, which challenges the trial court's ruling to uphold the decision of the Civil Service Commission that terminated him from his position with appellee, city of Cleveland, Division of Water ("the city"). After a thorough review of the record and for the reasons set forth below, we affirm.

{¶ 2} On May 18, 2005, Scott was terminated by the city from his position as a Water Plant Operator I. At a predisciplinary hearing held on May 16, 2005, the city determined that Scott was insubordinate for refusing to appear for a random drug test, as required by his "last chance agreement" with the city. Following the predisciplinary hearing, the city sent Scott a letter notifying him of the grounds for his termination. The letter specifically stated that Scott was being terminated for "being in violation of the Rules of Civil Service 9.10 and the City of Cleveland's Drug-free Workplace Policy." The letter provided the underlying facts in support of the violations, including the following: Scott did not appear on May 11 for drug testing, he did not appear for testing on two other occasions available to him before May 13, and he refused to appear for testing on his scheduled day off. Finally, the letter noted that because Scott was subject to a last-chance agreement, any refusal to take a random drug test would result in his termination.

{¶ 3} On September 28, 2005, an administrative referee's hearing was held by the city's civil service commission. Both Scott and the city had an opportunity to present witnesses, cross-examine opposing witnesses, present documentary evidence, and submit posthearing briefs.

{¶ 4} The referee upheld Scott's termination, finding, "It was undisputed that [Scott] refused to appear for a drug test that he was instructed to take on May 13, 2005 [which] violat[ed] the terms of the Last Chance Agreement and, by the terms of that agreement, [constituted] just cause for termination of employment" and "[T]ermination should be sustained." The referee did not find that Scott had violated the city's drug-free workplace policy or that he had violated the order to appear on May 11 for testing.

{¶ 5} Pursuant to Rule 9.60 of the Civil Service Commission, City of Cleveland, Scott exercised his right to appeal the referee's decision to the full commission. On May 24, 2006, the commission held a hearing at which both parties called witnesses, presented documents, and made arguments. The commission took the appeal under advisement and decided to uphold the referee's decision.

{¶ 6} On April 11, 2006, Scott filed an appeal of the commission's decision in the common pleas court. On March 15, 2007, the trial court affirmed the commission's decision. In its journal entry, the trial court issued the following findings:

{¶ 7} "Having reviewed the entire certified record, the court affirms the decision of City of Cleveland's Civil Service Commission. The court holds that the decision of the Commission [was] not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Moreover, the court finds that there was no due process violation, as appellant was given sufficient notice of the charges and evidence against him. In addition, appellant had opportunities to prepare a defense in his behalf. See e.g., *Robinson v. Springfield Local Sch. Dist. Bd. of Educ.* (2001), 144 Ohio App.3d 38, 759 N.E.2d 444. This makes the case distinguishable from that of *Clipps v. City of Cleveland,* [Cuyahoga App. No. 86887,] 2006-Ohio-3154 [2006 WL 1705130], wherein the appellant was unaware that other incidents were being considered as grounds for demotion. Again, the court notes that appellant had the opportunity to present his side of the story. For the foregoing reasons, the commission's decision is affirmed and appellant's appeal is denied."

{¶ 8} On April 12, 2007, Scott appealed the trial court's decision, which is the matter before this court.

{¶ 9} Scott was employed by the city's Division of Water for 16 years. After testing positive for marijuana use in July 2004, Scott and the city executed a last-chance agreement on November 5, 2004, that required Scott to submit to random drug testing. Specifically, the agreement states that Scott "agrees to submit to periodic, random drug, alcohol, or drug and alcohol tests, conducted by the employer at any time within the next twenty-four (24) months following this agreement." It further states that Scott "acknowledges and understands that he shall be immediately discharged for refusing to submit to a drug, alcohol or drug and alcohol test." The agreement allows that in the event of a violation of one of these conditions, Scott will be immediately scheduled for a predisciplinary hearing to determine whether the violation occurred and, if so determined, Scott will be terminated.

{¶ 10} Prior to the incident leading to his termination in May 2005, Scott had reported for six random drug tests, all of which tested negative for drug use.[1]

{¶ 11} On May 10, 2005, Tim Mullen, the assistant plant manager for the city's Division of Water, informed Scott that he was ordered to report for a predisciplinary hearing on an unrelated matter and for a random drug test the following day before his work shift began. Specifically, Mullen told Scott to report at 3:30 p.m. on May 11, knowing that Scott's shift on that day began at 5:30 p.m. Due to an apparent miscommunication between the two men, Scott believed the hearing had been canceled; therefore, he believed the drug test had also been canceled. According to Mullen, Scott arrived at work at 5:20 p.m., which made it impossible for the hearing to go forward; thus, Scott failed to report for the ordered drug test.

{¶ 12} Consequently, Mullen called Scott at his home on Thursday, May 12, and told him he was required to report for drug testing the following day, May 13. Scott advised Mullen that he was not scheduled to work that day; therefore, he would not report for the drug test. Scott maintains that under the last-chance agreement, when he was called to report for a random drug test, he was only required to report on his next scheduled work day and never on his day off. He refers specifically to an e-mail communication dated May 9, 2005, from Marquita James that referred to last-chance-agreement drug testing, for which he was scheduled the week of May 9 through May 13. The communication reads: "If the employee is not on duty, the employee should report to Lutheran on his/her next scheduled workday."

{¶ 13} A predisciplinary conference was held on May 16; the hearing was attended by Scott, Local 18S Steward Damon Schultz, plant manager Richard Papp, assistant plant manager Tim Stephens, and civil service representative Kevin Prendergast.

{¶ 14} By letter dated May 18, 2005,[2] Scott was terminated from his position with the Division of Water. The letter stated that he was being discharged "for being in violation of the Rules of Civil Service 9.10 and the City of Cleveland's Drug-free Workplace Policy, as well as for failing to meet the requirements of [his] last chance agreement." The letter also provided the details that supported the city's determination that Scott had violated city policy, including his failure to report early for his shift on May 11 in order to be drug tested and his failure to

---

1. There is no dispute that the testing requirement was random. Scott's attorney makes clear, and the city agrees, that Scott was not being required to submit to "reasonable suspicion" drug testing, which occurs when an employee is believed to be impaired by drugs or alcohol during a work shift.

2. The letter was sent by J. Christopher Nielson, Commissioner, Division of Water.

appear on two other occasions to complete drug testing. Finally, the letter stated that if Scott "wished to appeal this decision, [he] may do so by contacting Local 18S, so that [his] appeal can be processed through the grievance procedure."

{¶ 15} Scott exercised his right to appeal the city's decision under R.C. 4117.03(A)(5),[3] and he was granted a referee's hearing on September 28, 2005. The referee issued his findings of facts and conclusions of law on or before November 7, 2005. In his factual findings, the referee found that the city had failed "to establish by a preponderance of the evidence that [Scott] refused to report for a random drug test on May 11, 2005," and that instead his "failure to appear for a drug test on May 11 was the result of a failure of communication." The referee further found that "[i]t was not disputed that [Scott] expressly refused to report for a drug test on May 13, 2005," his scheduled day off. He found that "[Scott] failed to report for the drug test on May 13, 2005, as instructed." Finally, the referee found that although at the time he was instructed to report on May 13, Scott had worked only 24 hours that week, and had he reported for the drug test early on May 11 or on his day off, May 13, the city would have paid him overtime according to city practice.[4]

{¶ 16} In his conclusions of law, the referee acknowledged that the charter requirements regarding overtime were not identical to the provisions in the collective-bargaining agreement. The referee held that on May 13, Scott was lawfully required to report for drug testing under the terms of his last-chance agreement and that Scott's argument regarding overtime hours did not have merit. Thus, the referee sustained Scott's termination.

{¶ 17} The city then sent a letter to Scott dated November 10, 2005, which set forth the referee's decision and also stated that "[a]ccording to Civil Service Rule 9.60, you may appeal your termination to the Civil Service Commission within ten days from the date of this letter."

{¶ 18} On March 24, 2006, a hearing was held before the commission on Scott's appeal. The commission heard witnesses, reviewed documents, and listened to arguments by counsel for the city and Scott, after which it denied Scott's appeal of his termination from the Division of Water.

---

3. "(A) Public employees have the right to: * * * (5) Present grievances and have them adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of the collective bargaining agreement then in effect and as long as the bargaining representatives have the opportunity to be present at the adjustment."

4. Scott argues that he was already scheduled to work a 48–hour week and that by coming in on his day off, he would have been, in essence, forced to work overtime. However, Scott had not worked more than 24 hours of the week this situation occurred.

▬▬▬▬▬▬

{¶ 19} Scott filed a timely appeal of the commission's decision in the common pleas court. The city filed a motion to dismiss, asserting lack of subject-matter jurisdiction. This motion was denied by the trial court's journal entry dated June 9, 2006. On March 15, 2007, the trial court affirmed the commission's decision to sustain Scott's termination. Scott filed an appeal to this court.

## Jurisdiction

{¶ 20} Before reaching the merits of this case, the city argues that the trial court lacked subject-matter jurisdiction to hear Scott's appeal. The trial court determined this issue when it denied the city's motion to dismiss for lack of jurisdiction. The crux of the city's argument is that Scott's sole remedy was to appeal his termination through the collective-bargaining grievance procedure.[5] We disagree.

{¶ 21} Scott is a member of the Civil Service Employees' Association, as well as the International Brotherhood of Operating Engineers, Local 18S. Scott was terminated for being in violation of Civil Service Rule 9.10. The city's civil service commission provides for an appeal to the commission for civil service employees seeking to challenge a discharge for violation of one of its rules. Further, the collective-bargaining agreement provides that "[a]ll matters concerning disciplinary action within the jurisdiction of the Civil Service shall be processed exclusively in accordance with the Civil Service Rules and Regulations."

{¶ 22} The correspondence received by Scott at each level of this process clearly set forth the succeeding steps he was required to take in order to preserve his appeal. In his discharge letter, Scott was advised that he should refer to Local 18S and its grievance procedure. Article 38 of the collective-bargaining agreement sets forth the steps taken by a collective-bargaining unit when a grievance is brought. Instead of filing a grievance with his unit, Scott chose to request a hearing by an administrative referee of the civil service commission.

▬ {¶ 23} We find that the holding in *Johnson v. Metro Health Med. Ctr.* (Dec. 20, 2001), Cuyahoga App. No. 79403, 2001 WL 1685585, applies here. The *Johnson* court held that R.C. 4117.03(A)(5) gives a public employee the right to file a grievance without the intervention of the bargaining representative, but it must be done before union representation is invoked. Scott never sought his

---

5. The city is not contesting whether Scott had the right to appeal a civil service commission decision to the common pleas court. R.C. 2506.01. The challenge is whether Scott could appeal his termination to any body other than that provided by his collective-bargaining agreement.

union's representation but instead appealed his termination directly to the referee. We find that Scott appealed his case through the proper channels, which now brings it to this court. The trial court properly denied the city's motion to dismiss this case for lack of jurisdiction.

{¶ 24} Scott raises two assignments of error before this court, one substantive and the other procedural. We address the assertion of procedural error first.

## Due Process Violation

{¶ 25} "II. Plaintiff-appellant's termination of employment was in violation of his rights to procedural due process as guaranteed classified civil service employees of the City of Cleveland."

{¶ 26} In his second assignment of error, Scott argues that he was denied due process because he was terminated for conduct that was not identified by the city in his predisciplinary letter. Specifically, he argues that the letter stated that he was being terminated for insubordination for failing to report for random drug testing on May 11, when, in fact, he was terminated for insubordination for failing to appear for drug testing on May 13.

{¶ 27} Scott correctly cites *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, the "controlling case that speaks to the issue of what process is due an employee in a pretermination hearing." In *Loudermill*, the court held generally that "the pretermination 'hearing,' though necessary, need not be elaborate" and that " 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Id. at 545, 105 S.Ct. 1487, 84 L.Ed.2d 494. More specifically, the *Loudermill* court set forth the basic requirements as follows:

{¶ 28} "The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. * * * The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. * * * To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id. at 546, 105 S.Ct. 1487, 84 L.Ed.2d 494.

{¶ 29} The city held a full evidentiary hearing, at which time Scott presented evidence in defense of his failure to report for random drug testing. The city terminated him on the basis that this failure to report was insubordination. The fact that the administrative referee concluded that Scott had violated only the

order to report for drug testing on May 13 does not change the fact that Scott had both notice and an opportunity to respond to the charges against him at the predisciplinary hearing.

{¶ 30} We find that Scott was afforded his due process rights at the predisciplinary hearing; therefore, we overrule his second assignment of error.

## Termination Not Supported by Evidence

{¶ 31} "I. The trial court erred, as a matter of law, in finding that the decision of the Cleveland Civil Service Commission, in terminating the employment of the appellant, was supported by the preponderance of substantial, reliable and probibitive [sic] evidence and that the decision was not illegal, arbitrary, capricious, unreasonable or unconstitutional."

{¶ 32} In his first assignment of error, Scott argues that the trial court erred in upholding the decision to terminate his employment. He claims that the evidence the trial court relied on did not support a finding that he had violated a direct order to report for random drug testing on his scheduled day off.

{¶ 33} It is well established that administrative appeals brought pursuant to R.C. 124.34 and 119.12 are subject to trial de novo. *Wolf v. Cleveland,* Cuyahoga App. No. 82135, 2003-Ohio-3261, 2003 WL 21434779. The common pleas court may substitute its own judgment on the facts for that of the civil service commission, based upon the court's independent examination and determination of conflicting issues of fact. Id., citing *Newsome v. Mun. Civ. Serv. Comm.* (1984), 20 Ohio App.3d 327, 20 OBR 430, 486 N.E.2d 174. A trial court must not simply determine if the ruling of the civil service commission was arbitrary or capricious, the standard for appeals brought pursuant to R.C. Chapter 2506, but must evaluate the evidence anew.

{¶ 34} On the other hand, "[a]n appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 35} The trial court found that the evidence supported Scott's termination from the city. Scott knew that he was subject to the conditions of his last-chance agreement, which required him to report for random drug testing at any time his employer chose. He knew that the consequence for not reporting was immediate discharge from employment. Scott had already missed a reporting opportunity on May 11. Although Scott was not scheduled to work on May 13, had he reported for testing on that day, he would have been paid for his time. As of May 13, Scott had worked only 24 hours that week. Had Scott reported for the test and then worked enough hours the remainder of the week to be eligible for overtime pay, the city would have paid him for the overtime hours, per the collective-bargaining agreement.

{¶ 36} Scott provided evidence that he did not have a car accessible to him on May 13 because he had planned to lend his car to his daughter. Further, he stated that traveling to the water plant by public transportation would require several transfers. We are not convinced that these circumstances warrant reversing the trial court for having abused its discretion.

{¶ 37} The trial court reviewed the law and facts in this case before making its determination. We find that the trial court's decision to uphold Scott's termination was supported by substantial, reliable, and probative evidence; therefore, we overrule his first assignment of error.

Judgment affirmed.

COONEY, J., concurs in judgment only.

SWEENEY, A.J., dissents.

CONWAY COONEY, Judge, concurring in judgment only.

{¶ 38} I concur in judgment only because I would affirm the trial court on the basis that Scott should have filed a grievance pursuant to his collective-bargaining agreement ("CBA") and had no right to appeal through the civil service process.

{¶ 39} Scott's termination letter of May 18, 2005, informed him that he could appeal the city's decision through the grievance procedure. Scott's collective-bargaining agreement, Article 38, provides that a grievance is defined as a dispute or difference between the city and an employee concerning compliance with any provision of that contract, including any and all disciplinary actions. If the grievance is not satisfactorily settled at step three as outlined in the CBA, the union/employee may, within 30 calendar days in the case of a grievance appealing an employee discharge, submit the matter to final and binding arbitration.

{¶ 40} This court upheld the applicability of the grievance process in an analogous case, *Brown v. Cleveland,* Cuyahoga App. No. 84708, 2005-Ohio-514, 2005 WL 315429, in which the city had mistakenly informed the employee of her right to pursue a civil service appeal. However, the case cited by the majority, *Johnson v. Metro Health Med. Ctr.* (Dec. 20, 2001), Cuyahoga App. No. 79403, 2001 WL 1685585, is easily distinguished from the instant case. In *Johnson,* the employee chose to have her union represent her in filing a grievance. Therefore, she had no standing to pursue a further appeal because she was not a party in the underlying action.

{¶ 41} Here, Scott had a right to pursue a grievance under the CBA, with or without union representation. He incorrectly pursued a civil service appeal. Therefore, I would affirm the trial court's decision upholding his termination.

SWEENEY, Administrative Judge, dissenting.

{¶ 42} I respectfully dissent. This case involves a contract concerning terms of Scott's employment. "[P]arties to an employment contract, as with any other contract, are bound toward one another by standards of good faith and fair-dealing." *Bolling v. Clevepak Corp.,* 20 Ohio App.3d 113, 121, 20 OBR 146, 484 N.E.2d 1367. The law implies a condition that neither party will act so as to defeat the other party's legitimate expectations under the contract. Restatement of the Law 2d, Contracts (1981) 189, Section 230.

{¶ 43} According to the record, the city terminated Scott for "being in violation of the Rules of Civil Service 9.10 and the City of Cleveland's Drug–Free Workplace Policy, as well as for failing to meet the requirements of [his] last chance agreement."

{¶ 44} The city cited paragraph 8 of Civil Service Rule 9.10, which pertains to "insubordination," and also an excerpt from its drug-free workplace policy that provides: "Civil Service Rule 9.10 states that any officer or employee in the classified service may be discharged, suspended or reduced in rank for intoxication or misuse or abuse of drugs in the course of his or her employment."

{¶ 45} On May 10, 2005, the city requested that Scott report to work early for his shift the next day in order to attend a predisciplinary hearing and then submit to drug testing, which he agreed to do. However, the predisciplinary hearing was cancelled, leading Scott to believe that the subsequent drug testing had likewise been cancelled. While the city representative denies it, Scott maintains that he offered to submit to drug testing upon his arrival to work on May 11, 2005. Scott maintains that he was willing to submit to drug testing throughout the duration of his shift on May 11, 2005. Instead, his superior told him it would be rescheduled for "a later date." Scott did not hear of it again until he returned

a call to work the evening of May 12, 2005. The city instructed him to come in for testing the following day at 3:30 p.m., which he said he could not do.

{¶ 46} Scott worked 12–hour shifts. The week in question, Scott was scheduled to work May 10 and 11 from 5:30 a.m. to 5:30 p.m. Scott was not scheduled to work on May 12 or May 13. Then, he was scheduled to work the next three days. Nonetheless, when Scott would not or could not come in for testing on his day off (May 13) as demanded by the city at 6 p.m. the evening of May 12, the city terminated him by letter dated May 18, 2005.

{¶ 47} Scott stated that he could not make it into work on May 13, but he indicated that he was scheduled to work the following day and could take the test at that time. Scott did not have access to a car on May 13, 2005, and taking the bus would have required numerous transfers.

{¶ 48} In the summer of 2004, the city required Scott to execute a last-chance agreement after he tested positive for drugs. Scott explained that he had "smoked a part of [a joint of marijuana]" while golfing on vacation, which he classified as a "stupid mistake." The last-chance agreement executed by Scott, his union, and the city on November 5, 2004, provided that he would submit to "periodic, random drug * * * tests conducted by the employer at any time within the next twenty-four (24) months following this agreement."

{¶ 49} There is nothing to suggest that Scott's termination resulted from a violation of the cited provisions of the city's drug-free workplace policy. Indeed, he had previously submitted to at least six random drug tests, which all resulted negative for drug use. According to Scott, all of those random tests were administered to him during working hours.

{¶ 50} The referee for the Cleveland Civil Service Commission found that the city failed to establish any violation by Scott of the drug-free workplace policy. The referee further concluded that the city failed to establish that Scott refused to submit to drug testing on May 11, 2005. However, the referee concluded that Scott violated the last-chance agreement when he did not appear for drug testing on May 13, 2005, his scheduled day off, and sustained his termination for that reason. The trial court upheld that decision, but I would not.

{¶ 51} Scott legitimately and reasonably expected that the condition of random drug testing would apply only during times he was working. This understanding is buttressed by the custom and practice established by these parties whereby all the previous random tests were conducted on days Scott was scheduled to work. To provide otherwise would allow the city to demand testing at any hour of the day, seven days a week, which is simply unreasonable. When Scott did not submit to testing on his day off work, he was terminated notwithstanding the opportunity to conduct the test during working days. Summoning an employee

to appear on demand "at any time" or lose his job does not comport with the notions of good faith and fair dealing that applies to contracts such as this. The fact that the city would have paid Scott overtime for coming to work on his day off for drug testing does not dissuade me. It was essentially undisputed that getting to work on May 13, 2005, would have been a significant inconvenience to Scott, who did not have a car that day. The last-minute demand to change his plans and find a way to work or lose his job is very unreasonable. This is especially true when he was at work for 12–hour shifts on May 10 and 11, 2005, and was also scheduled to be there the three days following May 13, 2005. Therefore, I would sustain the first assignment of error.